**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**Case No. 2:19-cv-00142-SPC-MRM**

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

      Plaintiff,

v.

JOHN DOE subscriber assigned IP address
174.63.150.232, an individual,

      Defendant.

_____/

**PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY
SUBPOENA PRIOR TO RULE 26(f) CONFERENCE AND INCORPORATED
MEMORANDUM OF LEGAL AUTHORITY**

Pursuant to Fed. R. Civ. P. 26(d)(1), Strike 3 Holdings, LLC ("Plaintiff" or
"Strike 3"), respectfully moves for entry of an order granting it leave to serve a third-
party subpoena on Comcast Cable, prior to a Rule 26(f) conference (the "Motion") in
order to effectuate service on Defendant. In support of this Motion, Plaintiff files the
following: (1) Declaration of Greg Lansky as Exhibit "A"; (2) Declaration of Tobias
Fieser as Exhibit "B"; (3) Declaration of Philip Pasquale as Exhibit "C"; and (4)
Declaration of Susan B. Stalzer as Exhibit "D." Should the Court authorize Plaintiff to
submit a Proposed Order, Plaintiff will promptly submit one in accordance with the
Court's procedures. Plaintiff provides the following Memorandum of Legal Authority in
support of this Motion:

1

**<u>MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT OF PLAINTIFF'S
MORE MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A
RULE 26(f) CONFERENCE</u>**

## I.     INTRODUCTION

Strike 3 is the owner of original, award-winning adult motion pictures featured on its subscription-based websites.[1]  Unfortunately, like many other producers of motion pictures, Strike 3's success is substantially harmed and threatened by users on the Internet illegally infringing its works on a very large scale.  Indeed, Strike 3's motion pictures are among the most infringed content in the world.  *See* Lansky Decl. ¶ 25.[2]

To address this problem, Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content.   IPP discovered that Defendant's IP address was illegally distributing numerous motion pictures owned and copyrighted by Strike 3.  Strike 3's independent forensic expert, Philip Pasquale reviewed the evidence captured by IPP and confirmed that Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP.  *See generally* concurrently-filed Declaration of Philip Pasquale.  Strike 3 only knows Defendant by his or her IP address.  This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party that has the information necessary to identify Defendant by correlating the IP address with John Doe's identity.

---

[1] *See generally* concurrently-filed Declaration of Greg Lansky ("Lansky Decl.").

[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May  24,  2017),  https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

As a result, Strike 3 now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC ("Comcast Cable"), so that Strike 3 may learn Defendant's identity, investigate Defendant's role in the infringement, and if warranted by the investigation, effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("[E]xpedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.").

Accordingly, Strike 3 hereby seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Strike 3 will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor can it pursue this lawsuit and protect its copyrights.

## II.     FACTS

### A.     BitTorrent Infringement has a Serious and Damaging Impact on Strike 3.

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS"), the parent company that owns Strike 3. *See* Lansky Decl. at ¶ 1. Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. *Id.* at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id.*

3

Mr. Lansky is the Chief Creative Officer of the Brands. *Id.* at ¶ 1. In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id.* at ¶ 4. He has always been passionate about photography and cinematography. *Id.* It was a difficult start. Mr. Lansky, who barely spoke speak English, had trouble making connections and finding employment. *Id.* at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the biggest adult brands in the world. *Id.* at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id.*

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id.* at ¶ 7. After a few years, his Brands turned into a multi-million dollar a year business. *Id.* at ¶ 10. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the adult industry. *Id.* at ¶ 15.

Because of this, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world, with 20 million unique visitors to its websites per month, and have a loyal following. *Id.* at ¶ 10. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 18. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 19. Mr. Lansky himself has also won "director of the year" three years in a row. *Id.*

4

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen." *Id*. at ¶ 22. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 29.

B. Strike 3 Brings its Litigation in Good Faith.

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. Lansky Decl. at ¶ 28. Therefore, Strike 3 only files strong cases against extreme infringers. *Id*. at ¶ 29. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id*. All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library. *Id*. Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id*. at ¶ 30. Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint. *Id*.

Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into

5

confidentiality agreements with defendants to facilitate resolution of cases; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity.  Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.  *Id.* at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses.  *Id*. at ¶ 32.  This litigation, or any litigation instituted by Strike 3, is not a business model.  *Id*.  Instead, Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and redirect the infringement back into legitimate sales. *Id.* Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees.  *Id*.

## III.   ARGUMENT

### A.   Legal Standard Governing Expedited Discovery Requests to Identify an Anonymous Defendant.

"The Federal Rules of Civil Procedure prohibit 'discovery from any source before the parties have conferred as required by Rule 26(f), except,' *inter alia*, when authorized by court order." *Clear Skies Nevada, LLC v. Doe*, No. CV 15-1987-ORL-40-TBS, 2015 WL 12938950, at *1 (M.D. Fla. Dec. 3, 2015) (citing Fed. R. Civ. P. 26(d)(1) and M.D. FLA. R. 3.05(c)(2)(B)).  "Permission to take expedited discovery prior to the Rule 26(f) conference may be granted upon a showing of good cause." *Malibu Media, LLC v. Doe*,

No. CV 15-2314-T-17TBM, 2015 WL 12856086, at \*1 (M.D. Fla. Nov. 6, 2015) (collecting cases).

"In cases involving infringement via the [I]nternet, courts often evaluate good cause by considering factors such as the concreteness of the plaintiff's prima facie case of infringement; the specificity of the discovery request; the absence of alternative means to obtain the subpoenaed information; and the need for the subpoenaed information to advance the claim." *Manny Film LLC v. Doe*, No. CV 15-507-T-36EAJ, 2015 WL 12850566, at \*1 (M.D. Fla. May 18, 2015) (citing *Arista Records v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (citing *Sony Music Entm't v. Does 1–40*, 326 F. Supp. 2d 556, 564–65 (S.D. N.Y. 2004)). "Plaintiff has established that good cause exists, based on the above-referenced factors, for it to serve a third party subpoena on . . . the Internet Service Provider . . . ." *Malibu Media, LLC v. Doe*, No. CV 14-61955, 2014 WL 12605556, at \*1 (S.D. Fla. Nov. 17, 2014); *see e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. CV 17-1680 (CSH), 2017 WL 5001474, at \*6 (D. Conn. Nov. 1, 2017).

    B.    <u>There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena.</u>

                *1.*    *Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement.*

To make a *prima facie* claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the

constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *see also* Complaint at ¶¶ 31–32. Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, IPP International U.G.'s employee, Tobias Fieser. *See* Declaration of Tobias Fieser, Exhibit "B." Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan Stalzer, Exhibit "D."

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶36. "This is sufficient to state a prima facie claim." *Strike 3 Holdings, LLC v. Doe*, No. CV 18-777 (JRT/BRT), 2018 WL 2078707, at \*2 (D. Minn. May 4, 2018); *see Malibu Media*, No. CV 15-2314-T-17TBM, 2015 WL 12856086 at \*1 (finding a similar claim established a prima facie case, particularly because it was "demonstrated through a forensic investigation which reasonably confirms that Doe Defendant's IP address was being used on the BitTorrent peer-to-peer network to reproduce and display Plaintiff's copyrighted work").

        2.       *Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant.*

"Plaintiff's subpoena clearly seeks relevant information." *Strike 3 Holdings, LLC v. Doe*, No. CV 18-2648 (VEC), 2019 WL 78987, at *3 (S.D.N.Y. Jan. 2, 2019). "Plaintiff's request is specific in that it is limited to basic information such as Doe Defendant's name and addresses." *Manny Film*, No. CV 15-507-T-36EAJ, 2015 WL 12850566 at *2. "Courts have labeled the subscriber's identity and address as 'highly specific,' recognizing that Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims . . . ." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *3 (citations and internal quotations omitted).; *Malibu Media*, No. CV 15-2313-T-17EAJ, 2015 WL 12850570 at *1 ("Plaintiff's request is specific in that it is limited to basic information such as Doe Defendant's name and addresses."). "Because the subpoena is sufficiently specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for leave to serve the subpoena." *Strike 3 Holdings*, No. CV 17-1680 (CSH), 2017 WL 5001474 at *3.

        3.       *There Are No "Alternative Means" to Uncover Doe Defendant's True Identity.*

At this early stage in litigation, "[t]he only information Plaintiff has regarding Defendant Doe is his IP address." *Id.* at *4. People using the internet are anonymous to the public, but the ISPs responsible for assigning any given IP address know who an address is assigned to and how to get in contact with them. Since there is no public registry of what IP addresses correspond to which subscribers, Plaintiff's subpoena is

necessary to advancing litigation. *See* Declaration of Philip Pasquale, Exhibit "C"; *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) (noting "only the ISP can match the IP address to the subscriber's identity").

There is simply no alternative means by which Plaintiff can identify Doe Defendant absent the present subpoena.  Indeed, "BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address." *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012).  "Plaintiff has established that good cause exists for it to serve a third-party subpoena on . . . the ISP identified in the complaint, because a Rule 45 subpoena to John Doe's ISP is the only way in which Plaintiff can identify John Doe and thus move forward with the case." *Malibu Media, LLC v. Doe*, No. CV 13–21579, 2013 WL 2950593, *1 (S.D .Fla. June 14, 2013).

 "Moreover, the information the plaintiff seeks is time sensitive as ISPs do not retain user activity logs for an extended duration." *Malibu Media*, No. CV 15-2295-T-24TGW, 2015 WL 12850568 at *1.  "If the information is erased, Plaintiff will be unable to link the IP address to Doe Defendant and pursue its infringement lawsuit. In situations where 'time is of the essence,' courts have found good cause to grant expedited discovery." *Id.* (citing *Arista Records LLC v. Does 1–7*, No. CV 3:08–18(CDL), 2008 WL 542709, at *1 (M.D. Ga. Feb. 25, 2008) (citation omitted)).  Simply put, "Plaintiff has no other means to uncover Doe Defendant's identity." *Manny Film*, No. 15-CV-507-T-36EAJ, 2015 WL 12850566 at *2.

4.      *The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim.*

As previously emphasized, Plaintiff cannot properly serve Doe Defendant without first ascertaining the subscriber's identity from his or her ISP.  As one court aptly framed it: "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Entm't*, 326 F. Supp. 2d at 566.  "Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery." *Arista Record*s, 589 F. Supp. 2d at 153.  "[W]ithout identifying Doe Defendant, Plaintiff cannot issue a summons and serve Doe Defendant in this lawsuit. Without participation by Doe Defendant, there can be no meaningful Rule 26(f) conference. Accordingly, Plaintiff has established good cause for proceeding with expedited discovery prior to the Rule 26(f) conference."  *Manny Film*, No. CV 15-507-T-36EAJ, 2015 WL 12850566 at *2.

5.      *Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers.*

"[T]here is no expectation of privacy in 'subscriber information provided to an internet provider,' such as an IP address." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *5 (citation omitted); *see also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566–67 (noting Plaintiffs are "entitled to discovery in light of" this minimal interest). "Although the Eleventh Circuit has not addressed whether the Fourth

11

Amendment protects IP addresses,[3] other courts of appeal have held that it does not." *Levinson v. United States*, No. CV 14-81244, 2016 WL 5408165, at \*2 (S.D. Fla. Sept. 28, 2016), *certificate of appealability denied*, No. CV 16-17548, 2017 WL 6760762 (11th Cir. May 11, 2017) (collecting cases). Indeed, courts throughout this Circuit have held that "Defendant does not have a reasonable expectation of privacy in [his or her] IP address . . . ." *United States v. Ryan Anthony Adams*, No. CR 6:16-11-ORL-40GJK, 2016 WL 4212079, at \*4 (M.D. Fla. Aug. 10, 2016); *see also id.* at \*3 ("Computer users lack a legitimate expectation of privacy in information regarding the to and from addresses for emails, the IP addresses of websites visited, the total traffic volume of the user, and other addressing and routing information conveyed for the purpose of transmitting Internet communications to or from a user."). Here, Plaintiff's central need for the subpoenaed for information, combined with its strong claim, substantially favors good cause. *See Arista Records*, 604 F.3d at 124 (finding Doe Defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement.").

As to free speech concerns, "[i]n cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law." *Strike 3 Holdings*, No. CV

---

[3] For a discussion on how IP address connect to and route Internet traffic, *see generally United States v. Steiger*, 318 F.3d 1039, 1042 (11th Cir. 2003) and articles cited within.

3:17-1680 (CSH), 2017 WL 5001474 at *6 (listing examples). "[T]he Doe Defendant's First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the Internet Service Provider. Plaintiffs will be granted leave to take early discovery to determine the identity of Defendant Doe." *Id.* "'[C]ourts routinely find the balance favors granting a plaintiff leave to take early discovery' of the materials sought by the Plaintiffs here." *Arista Records*, 589 F. Supp. 2d 151 at 153 (*quoting UMG Recordings, Inc. v. Doe*, No. CV 08–1193, 2008 WL 4104214, at *4 & n. 3 (N.D. Cal. Sept. 3, 2008)).

C.      Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed pseudonymously.  *See Manny Film*, No. CV 15-507-T-36EAJ, 2015 WL 12850566 at *2 (employing various safeguards); *see also Strike 3 Holdings, LLC v. Doe*, 2019 WL 78987 at *1 (employing safeguards including allowing the defendant to proceed pseudonymously).   To that end, Plaintiff respectfully encourages the Court to establish procedural protections it deems appropriate.

**IV.     CONCLUSION**

For the foregoing reasons, Strike 3 respectfully requests this Court grant leave to Strike 3 to issue a Rule 45 subpoena to Defendant's ISP.

## LOCAL RULE 3.01(g) CERTIFICATION

As explained in the foregoing Motion, Defendant is known only by an IP Address.  Because undersigned counsel does not know Defendant's identity, undersigned could not confer with Defendant in accordance with Local Rule 3.01(g) prior to filing this Motion.

Dated: 03/27/2019

Respectfully submitted,

GREENSPOON MARDER, LLP

*/s/ Rachel E. Walker*
RACHEL E. WALKER (FL Bar No. 111802)
600 Brickell Avenue, Suite 3600
Miami, FL 33131
Telephone: (305) 789-2770
Facsimile: (305) 537-3909
Primary Email: Rachel.Walker@gmlaw.com
Secondary Email: Gloria.Donaire@gmlaw.com

*Attorneys for Plaintiff*